**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOPICNIC BRANDS, INC., | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | Case No. 14-43382 |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on **December 18, 2014 at 10:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Jacqueline P. Cox,** Bankruptcy Judge, in Courtroom No. 680, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or in her absence, before such other Judge who may be sitting in her place and stead and hearing bankruptcy motions, and shall then and there present the **GOPICNIC BRANDS, INC.'S MOTION FOR ENTRY OF ORDERS (A) APPROVING BIDDING PROCEDURES AND AUCTION NOTICE IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF ITS ASSETS; (B) APPROVING SUCH SALE; AND (C) GRANTING RELATED RELIEF,** a copy of which is attached and herewith served upon you, and at which time and place you may appear if you so desire.

Date: December 12, 2014

GoPicnic Brands, Inc.

By: /s/ Brian L. Shaw
    One of its proposed counsel

Brian L. Shaw (IL ARDC 6216834)
Mark L. Radtke (IL ARDC 6275738)
David R. Doyle (IL ARDC 6303215)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
Phone: (312) 541-0151
Fax: (312) 980-3888
bshaw@shawfishman.com
mradtke@shawfishman.com
ddoyle@shawfishman.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOPICNIC BRANDS, INC., | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | Case No. 14-43382 |

**GOPICNIC BRANDS, INC.'S MOTION FOR ENTRY OF ORDERS
(A) APPROVING BIDDING PROCEDURES AND AUCTION NOTICE IN
CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF ITS ASSETS;
(B) APPROVING SUCH SALE; AND (C) GRANTING RELATED RELIEF**

Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9006, 9007, and 9014, GoPicnic Brands, Inc., the above-captioned debtor and debtor in possession ("Debtor" or "GoPicnic") hereby requests that this Court enter orders authorizing (i) bidding procedures in connection with a potential sale of substantially all of its assets at auction; (ii) the sale of substantially all of the Debtor's assets free and clear of liens, claims and interests; (iii) the assumption and assignment of related executory contracts and unexpired leases; and (iv) limited notice with respect thereto (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

**Introduction**

**A.     The Chapter 11 Filing**

1.     On December 3, 2014 (the "Petition Date"), the Debtor filed a voluntary petition in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), thereby commencing the above-captioned case ("Case"). The Debtor continues to manage and operate its businesses as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The United States Trustee has not yet appointed a creditors' committee in the Case. No trustee or examiner has been appointed.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**B.  The Debtor's Business and Capital Structure**

4. GoPicnic was organized under the laws of the state of Delaware in 2011. Chicago-based GoPicnic is a pioneer and leader in delicious, nutritionally balanced and portable ready-to-eat breakfast, lunch and snacks. GoPicnic brands are available for a wide range of diet restrictions, including gluten free, vegetarian, vegan and kosher, and all GoPicnic meals contain no artificial colors or flavors, trans fat, high fructose corn syrup or MSG. GoPicnic brands are available at more than 15,000 retail locations nationwide.

5. GoPicnic's predecessor, GoPicnic, Inc. ("GPCL") was founded in 2006 by Julia Stamberger ("Stamberger"). In 2011, Stamberger caused GoPicnic to be incorporated in order to separately take ownership of what is now the GoPicnic assets and business operations. Subsequently, GoPicnic implemented a new capital structure funded by more than $3.5 million in private investment dollars (the "Capitalization Transaction"). To date, Stamberger continues to control and operate the business of GPCL. Upon information and belief, GPCL is not a debtor under the Bankruptcy Code.

6. In August 2014, GoPicnic entered into a $5 million senior secured revolving loan facility ("Pre-Petition Facility") with Wells Fargo Bank, National Association ("Wells Fargo"), which is secured by valid, perfected, continuing first-priority liens on, and security interests in, all, or substantially all, of GoPicnic's assets. As of the Petition Date, the outstanding balance of the Pre-Petition Facility is not less than $1,947,931.33 (and together with all interest (including default

rate interest), fees (including attorneys' fees), costs, expenses, and other charges accruing from and after the Petition Date, collectively, the "Prepetition Debt"), and GoPicnic has little or no availability under its borrowing base formula.

7. Previously, in December 2013, GoPicnic secured mezzanine debt ("Mezzanine Debt") from several parties including equity holders Partnership Capital Group Investors III, L.P. ("PCGI") and Clif White Road Investments, LLC ("CWRI"; and together with Wells Fargo and PCGI, collectively, the "Lenders") in the aggregate principal amount of $2 million. As of the Petition Date, the outstanding balance of the Mezzanine Debt is approximately $2.3 million. The Mezzanine Debt is secured by liens on all of GoPicnic's assets that are junior and subordinate in all respects to the liens and security interests of Wells Fargo pursuant to an August 2014 subordination agreement among Wells Fargo, PCGI, and CWRI.

C. **Events Leading up to the Bankruptcy**

8. Despite its strong brand recognition, GoPicnic finds itself seeking relief under chapter 11 of the Bankruptcy Code for two primary, and not entirely unrelated, reasons.

9. First, GoPicnic has under-performed and failed to meet operational projections despite the existence of what GoPicnic believes are a solid business model and quality product. As a result, and despite the insertion of over $5 million in equity over the past three years, GoPicnic has fallen short of its 2014 projections, has experienced little to no growth in 2014, and finds itself in need of additional liquidity.

10. Second, GoPicnic is currently in the midst of a shareholder dispute between Stamberger and certain affiliated entities and PCGI and CWRI, which arose after the GoPicnic board of directors removed Stamberger from her position as an officer and director of GoPicnic in April 2014. Though PCGI and CWRI had engaged in discussions in an attempt to resolve Stamberger's demands, the monetary and time costs attendant to addressing this dispute only

served to exacerbate GoPicnic's current financial distress and further decreased GoPicnic's ability to obtain more liquidity outside of the bankruptcy process.

11. As a result of these issues, GoPicnic's board of directors and management determined that it must take immediate action to preserve GoPicnic's operations and value as a going concern. Accordingly, in September 2014, GoPicnic commenced a marketing and sale process to sell its business and assets as a going concern (the "Transaction").

**D.   Marketing and Sale Efforts by GoPicnic**

12. GoPicnic has already begun marketing its assets, undergoing a process that includes:

   a.   Analyzing its business, operations, properties, financial condition, competition, forecast, prospects and management;

   b.   Preparing solicitation materials with respect to the Transaction and GoPicnic (the "Offering Materials");

   c.   Identifying and contacting selected qualified buyers ("Buyers") for the Transaction and furnishing them with copies of Offering Materials;

   d.   Arranging for potential Buyers to conduct due diligence investigations;

   e.   Reviewing proposed purchase prices and form of consideration for the Transaction; and

   f.   Developing, evaluating, structuring and negotiating the terms and conditions of a potential Transaction.

**Proposed Sale of GoPicnic's Assets**

**A. Overview of Proposed Sale Process**

13. After considering its options, including approaching possible sources of capital, GoPicnic has determined, in the exercise of its business judgment, that the best mechanism for maximizing asset value for the benefit of its estate and creditors is through an expeditious sale ("Sale") of substantially all of its assets ("Assets") as a going concern; provided, that the Assets

{11103-001 MOT A0392925.DOCX 4}    4

will in all events exclude, without limitation, any and all (a) avoidance actions under Chapter 5 of the Bankruptcy Code and (b) claims and causes of action of any kind or nature whatsoever of Debtor against Wells Fargo and its affiliates. Consequently, GoPicnic requests authority to sell its Assets free and clear of liens, claims and other interests, pursuant to a form asset purchase agreement (the "Asset Purchase Agreement") attached hereto as Exhibit A. GoPicnic intends to offer the Assets for sale at the Auction (as defined herein), subject to the bidding procedures described below.

14. Through this Motion, GoPicnic requests the entry of an order, substantially in the form of the preliminary order attached hereto as Exhibit B, approving the bidding procedures attached hereto as Exhibit C (the "Bidding Procedures"), and allowing associated preliminary relief in accordance with this Motion. Additionally, GoPicnic requests that this Court schedule a hearing (the "Sale Hearing") to approve a sale of the Assets pursuant to this Motion and the Bidding Procedures. GoPicnic requests that the Court enter an order or orders at the Sale Hearing in substantially the same form attached hereto as Exhibit D (the "Sale Order"): (a) authorizing GoPicnic to sell its Assets free and clear of all liens, claims and interests on the terms and conditions set forth in the Asset Purchase Agreement or variations thereof otherwise in accordance herewith; and (b) authorizing GoPicnic to (i) assume any applicable executory contracts and unexpired leases (the "Executory Contracts and Unexpired Leases"), (ii) assign the Executory Contracts and Unexpired Leases to the successful bidder(s) at auction, and (iii) pay the amounts, if any, necessary to cure existing defaults or arrearages under the Executory Contracts and Unexpired Leases, all as subject to the assumption and assignment procedures detailed below.

15. As described in more detail below, the proposed sale process contemplates the consummation of one or more Sales of GoPicnic's Assets within a relatively short time frame. In

particular, due to projected liquidity constraints, GoPicnic has determined, in the exercise of its business judgment, that the value of its estate will be maximized if the Sale is authorized by this Court by the end of January 2015.

### B. Summary of Proposed Bidding Procedures

16. In order to facilitate the sale process, GoPicnic has designed the Bidding Procedures for use in connection with the Auction, a summary of which are provided below. As described in more detail in the Bidding Procedures, GoPicnic intends to offer substantially all of its Assets as a single operating unit. However, GoPicnic also reserves the right in the Bidding Procedures to offer its Assets in such other combinations as GoPicnic determines, in the exercise of its business judgment, will result in the highest or otherwise best collective value for its Assets.

17. <u>Potential Bidders</u>. Each person wishing to participate in the Sale Process (a "<u>Potential Bidder</u>") must deliver a satisfactory confidentiality agreement to GoPicnic prior to gaining any access to any proprietary information for due diligence purposes.

18. <u>Due Diligence</u>. Potential Bidders shall be authorized to perform due diligence with respect to the acquisition of the Acquired Assets at their sole cost and expense to be completed on or before the close of business two (2) calendar days before the Auction ("<u>Bid Deadline</u>").

19. <u>Qualified Offers</u>. For purposes of the Bidding Process, a "<u>Qualified Bid</u>" shall mean a bona fide, binding, and duly executed written offer(s) to purchase the Acquired Assets in bulk or in specified lots received on or before the Bid Deadline, which, among other things: (i) is in form and substance substantially similar to the Asset Purchase Agreement; (ii) is irrevocable until the conclusion of the Sale Hearing, subject only to the provisions concerning the Backup Bid described below; (iii) is accompanied by a cashiers' check or wire transfer to be held as an earnest money deposit in an amount not less than five percent (5%) of the total amount of such bid; (iv) is accompanied by such evidence reasonably acceptable to GoPicnic demonstrating such bidder's

ability to close the proposed transaction and as otherwise described in the Bidding Procedures; (v) is actually delivered to GoPicnic and Wells Fargo; (vi) does not contain any financing contingency, and is not subject to any further due diligence review, board approval, or the receipt of any third-party consents; (vii) clearly states that all consideration to be paid at closing shall be cash; and (viii) provides for an effective closing date on or before February [__], 2015. All Qualified Bids must disclose the material terms and conditions of any contemplated employment or consulting agreement with any former or current insider of the Debtor.

20. <u>Determination of Qualified Bid</u>.  Upon receipt of any and all such competing bid(s), GoPicnic, in consultation with Wells Fargo, will determine whether such competing bid(s) is a Qualified Bid.  GoPicnic will promptly so notify the party submitting a Qualified Bid (each, a "<u>Qualified Bidder</u>") that it is a Qualified Bidder.  Notwithstanding anything herein to the contrary, (a) all bids submitted prior to the Bid Deadline as set forth above are subject to the approval of this Court after taking into account the best interests of GoPicnic's estate and (b) Wells Fargo is and will be a Qualified Bidder for all purposes and may credit bid all or any portion of the Prepetition Debt under Bankruptcy Code Section 363(k) as a Qualified Bid, including, without limitation, at any Auction.

21. <u>Auction and Sale Hearing</u>.  GoPicnic shall conduct the Auction of the Acquired Assets on January __, 2015, at _____ a.m. Only Qualified Bidders shall be entitled to make a bid at the Auction. Upon the conclusion of the Auction, GoPicnic, in consultation with Wells Fargo, shall identify the Successful Bid and the "<u>Backup Bid</u>", if any, as defined below. At the Sale Hearing, GoPicnic shall present to the Court the Successful Bid, and if applicable, the Backup Bid, and request the entry of the Sale Order approving such bid(s) subject to the terms thereof in a form reasonably satisfactory to the Successful Bidder and GoPicnic.

{11103-001 MOT A0392925.DOCX 4}    7

22. <u>Backup Bid</u>. GoPicnic may, but shall not be obligated to, request that the Court determine at the Sale Hearing the next highest and best bid for the Acquired Assets other than the Successful Bid ("<u>Backup Bid</u>"). In the event the party making the Successful Bid refuses or is otherwise unable to close, then, in such event, GoPicnic, in its sole and absolute discretion after consultation with Wells Fargo, may accept the Backup Bid, in which case, the party submitting the Backup Bid ("<u>Backup Bidder</u>") shall be required to consummate the transactions contemplated in the Backup Bid at the purchase price so offered without further act, deed or order of Court.

23. <u>Assets Sold As Is, Where is</u>. The Acquired Assets shall be sold on an "AS IS, WHERE IS" basis and without representations or warranties of any kind, nature, or description by GoPicnic, its agents or estate except to the extent expressly set forth in the Successful Bid, and if applicable, the Backup Bid. Except as otherwise provided in such agreement(s), all of GoPicnic's right, title and interest in and to the Acquired Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "<u>Interests</u>") in accordance with Section 363 of the Bankruptcy Code, with all such valid Interests to attach to the net proceeds of the sale of the Acquired Assets with the same extent, validity, priority, force and effect as such Interests applied against the Acquired Assets.

24. <u>Application or Return of Earnest Money Deposits</u>. All Deposits will be held if practicable in segregated, interest bearing trust accounts and shall be returned to the Qualified Bidders within two (2) business days from the entry of the Sale Order except for the Deposit of the Successful Bidder, which shall be applied to the purchase price, and the Deposit received under the Backup Bid which shall continue to be held pending the closing of the Successful Bid. Thereafter, the Deposit submitted with the Backup Bid shall be returned to such bidder within two

(2) business days of the closing on the Successful Bid, and the Deposit received in connection therewith shall be applied to the purchase price thereunder at the Closing, subject to the provisions described above if GoPicnic fails to give the requisite notice to the Backup Bidder of the acceptance of its offer.

25. <u>Buyer's Inspection Rights</u>. Each Qualified Bidder shall be deemed to acknowledge and represent in its Qualified Bid that it has had an opportunity to inspect and examine the Acquired Assets and to conduct any and all due diligence regarding the Acquired Assets prior to making its offer to the extent it has deemed necessary and appropriate, that is has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Acquired Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in its Qualified Offer.

26. <u>Disclosure of Employment of Insiders</u>. If the Successful Bidder or the Backup Bidder has reached, or contemplates reaching, an employment, consulting or other agreement with any former or current insider of GoPicnic, the material terms and conditions of any and all such employment, consulting and/or other agreements shall be disclosed to the Court prior to the entry of the Sale Order.

27. <u>Sale Hearing</u>. GoPicnic requests that the Sale Hearing take place on January __, 2015, with the closing of the Successful Bid to occur no later than two (2) business days after the entry of the Sale Order.

### C. Applicable Legal Authority for Proposed Sale

(i) <u>Sale Outside The Ordinary Course Of Business</u>

28. Section 363 of the Bankruptcy Code provides that the debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b). To approve the use, sale or lease of property outside the ordinary course of business, this court need only determine that the debtor's decision is supported by "some articulated business justification." *See, e.g., Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also Stephens Ind., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986); *In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991).

29. Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Company*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *In re Integrated Resources. Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

30. Indeed, when applying the "business judgment" rule, courts show great deference to the debtor's decision-making. *See Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981). Accordingly, this Court should grant the relief requested in this Motion if GoPicnic demonstrates a sound business justification therefor. *See Schipper*, 933 F.2d at 515; *In re Lionel Corp.*, 722 F.2d at 1071; *In re Delaware Hudson Ry. Co.*, 124 B.R. 169 at 179.

31. As explained above, GoPicnic has a sound business justification for selling substantially all its Assets at this time. GoPicnic simply lacks the financial resources and access to capital necessary to fund its operations for a prolonged period. GoPicnic has a small window of opportunity to maximize the value of its Assets through a going concern sale. For this reason, GoPicnic has determined, in the exercise of its business judgment, that the most viable option for maximizing the value of its estate is through one or more Sales of its Assets in the manner and in the timeframe set forth in the Bidding Procedures. Its request for approval to sell the Assets in accordance with the Bidding Procedures should be allowed accordingly.

(ii) <u>Sales Outside The Ordinary Course Of Business</u>

32. Under § 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, or interest in such property if, among other things:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

33. Because section 363(f) is drafted in the disjunctive, GoPicnic's satisfaction of any one of its five requirements will be sufficient to permit the sale of the Assets free and clear of Interests. GoPicnic believes that the primary entities holding liens on the Assets are the Lenders. GoPicnic is reasonably confident that it will obtain any necessary consent on or before the Sale Hearing and will thereby satisfy the requirements of § 363(f)(2).

34. Moreover, all holders of Interests, including the Lenders, can be compelled to accept a money satisfaction of such Interests in legal or equitable proceedings in accordance with § 363(f)(5). Such legal or equitable proceedings include proceedings to confirm a plan of reorganization, under which the holder of a lien may be compelled to accept payment in satisfaction of its lien pursuant to 11 U.S.C. § 1129(b)(2)(A).

35. Indeed, § 1129(b)(2)(A) specifically allows a debtor in possession to sell property subject to a lien, free and clear of such lien, if such lien attaches to the net proceeds of the sale, subject to any claims and defenses the debtor may possess with respect thereto. GoPicnic proposes that any Interests in the Assets attach to the net proceeds of the Sale(s) in this case with the same extent, validity, priority, force and effect as such Interests applied against the Assets.

## Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases

### A. Proposed Assumption and Assignment Procedure

36. As part of this Motion, GoPicnic seeks authority to assume and assign certain agreements and leases to the Successful Bidder or the Backup Bidder to the extent necessary. Because of the need to close any such transaction as quickly as possible in order to maximize value of the Assets, GoPicnic proposes the following procedures for assuming and assigning agreements and leases included in the Successful Bid and the Backup Bid.

37. On or before December 31, 2015, GoPicnic shall send a notice (the "Assignment Notice") by U.S. Mail delivery to each non-debtor counterparty to all executory contracts and unexpired leases of GoPicnic ("Executory Contracts and Unexpired Leases"). The Assignment Notice shall (i) identify each such agreement; and (ii) state the cure amounts, if any, that GoPicnic believes are necessary to satisfy in order to assume such agreement pursuant to 11 U.S.C. § 365 (the "Cure Amount"). At the Sale Hearing, the Debtor shall request the entry of an order

requesting authority to assume and assign the Executory Contracts and Unexpired Leases subject to the actual closing of an applicable Sale transaction. All non-debtor parties that are served with an Assignment Notice shall be entitled to appear at the Sale Hearing and object to the proposed assumption and assignment of their Executory Contracts and Unexpired Leases.

### B. Applicable Legal Authority for Proposed Assumption and Assignment

38. As a debtor in possession, GoPicnic has the right, subject to court approval, to assume any executory contracts or unexpired leases. *See* 11 U.S.C. § 365(a). The assumption of an unexpired lease by a debtor in possession is subject to review under the business judgment standard. If such business judgment has been reasonably exercised, a court should approve the assumption. *See, e.g., NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *Sharon Steel Corp. v. National Fuel Gas Distribution*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re RLR Celestial Homes, Inc.*, 109 B.R. 36, 46 (Bankr. S.D.N.Y. 1989).

39. Section 365(b)(1) of the Bankruptcy Code sets forth the requirements for assumption. This subsection provides as follows:

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or

lease, for any actual pecuniary loss to such party resulting from such default; and

    (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

40. The requirement of "adequate assurance of future performance" also applies when assumption is coupled with an intended assignment. Section 365(f)(2) of the Bankruptcy Code provides that:

[t]he trustee may assign an executory contract or unexpired lease of the debtor only if --

    (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

    (B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

41. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *See, e.g., EBG Midtown South Corp. v. McLaren/Hart Env. Engineering Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992); *In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance"); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

42. Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtor has financial

{11103-001 MOT A0392925.DOCX 4}    14

resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

43. In the exercise of its business judgment, GoPicnic intends to assume and assign the Executory Contracts and Unexpired Leases at Closing subject to the determination by the applicable Successful Bidder or the Backup Bidder that it desires to take an assignment of such contracts and unexpired leases. To the extent that any defaults exist under any Executory Contract or Unexpired Lease that is to be assumed and assigned, GoPicnic will cure any such default as a condition to such assumption and assignment. Moreover, GoPicnic will adduce facts at the Sale Hearing demonstrating the financial wherewithal of the applicable Successful Bidder or the Backup Bidder, their experience in the industry, and their willingness and ability to perform under the Executory Contracts and Unexpired Leases to be assumed and assigned.

44. The Sale Hearing therefore will provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder or the Backup Bidder to provide adequate assurance of future performance under the Executory Contracts and Unexpired Leases. The Court therefore should have a sufficient basis to authorize GoPicnic to assume and assign those Executory Contracts and Unexpired Leases.

## Notice

45. Notice of this Motion has been given by U.S. Mail or CM/ECF to (i) the Office of the United States Trustee, (ii) the Debtor's 20 largest unsecured creditors, and (iii) all parties requesting electronic notice. The Debtor proposes to provide the Sale Notice to all creditors, the Office of the United States Trustee, all entities reasonably known by the Debtor to have an Interest in the Assets to be sold, all counterparties to Executory Contracts and Unexpired Leases, and all parties requesting notice in this Case.

46.     The Debtor respectfully requests that this Court find the foregoing notice to be reasonable and sufficient under the circumstances and that it waive any further notice for cause shown. Moreover, in light of the urgency underlying this Motion and the corresponding need for the Debtor to consummate the Sale, as set forth above, the Debtor further requests that this Court exercise its authority under Fed. R. Bankr. P. 2002(a)(2) and 9007 to shorten applicable notice periods to accommodate the Sale timeframe specified herein.

### Conclusion

WHEREFORE, the Debtor respectfully requests that the court enter orders substantially in the forms annexed hereto: (i) approving the Bidding Procedures, (ii) authorizing the Debtor's sale of the Assets free and clear of liens, claims and other Interests; (iii) authorizing the Debtor's assumption and assignment of the Executory Contracts and Unexpired Leases; (iv) limiting and shortening notice as requested herein; and (v) granting such other and further relief as is just and proper.

Respectfully submitted,

Dated: December 12, 2014         GOPICNIC BRANDS, INC.

By   /s/ Brian L. Shaw
     One of its proposed attorneys

Brian L. Shaw (IL ARDC 6216834)
Mark L. Radtke (IL ARDC 6275738)
David R. Doyle (IL ARDC 6303215)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
Phone: (312) 541-0151
Fax: (312) 980-3888
bshaw@shawfishman.com
mradtke@shawfishman.com
ddoyle@shawfishman.com

*Proposed Counsel for Debtor*