**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOPICNIC BRANDS, INC., | ) | Case No. 14-43382 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | Hearing Date: February 17, 2016 at 9:30 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on February 17, 2016 at 9:30 a.m., the undersigned shall appear before the Honorable Jacqueline P. Cox in Courtroom 680, or whomever may be sitting in her place and stead, at the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn Street, Chicago, Illinois and will then and there present the *Second and Final Fee Application of Freeborn & Peters LLP as Counsel to the Official Committee of Unsecured Creditors and Request for Approval of Limited Notice* a copy of which is attached hereto and herewith served upon you.

Dated: January 21, 2016

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF GOPICNIC
BRANDS, INC.**

By:  /s/ Shelly A. DeRousse
       Its Counsel

Shelly A. DeRousse, Esq.
Elizabeth L. Janczak, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone:  312-360-6000
Facsimile:  312-360-6520

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOPICNIC BRANDS, INC., | ) | Case No. 14-43382 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | Hearing Date: February 17, 2016 at 9:30 a.m. |

**CERTIFICATE OF SERVICE**

I, Shelly A. DeRousse, an attorney, hereby certify that on January 21, 2016, I caused a true and correct copy of the foregoing *Notice of Motion* and *Second and Final Fee Application of Freeborn & Peters LLP as Counsel to the Official Committee of Unsecured Creditors and Request for Approval of Limited Notice* to be filed with the Court and served upon the following parties by the manners listed below.

/s/ Shelly A. DeRousse

**Service List**

**CM/ECF Service List**

William J. Barrett       william.barrett@bfkn.com
Jeremy M. Downs     jeremy.downs@goldbergkohn.com
David R. Doyle         ddoyle@shawfishman.com
Jeffrey W. Finke        jwfinke@mindspring.com
Zachary J. Garrett     zachary.garrett@goldbergkohn.com
Cindy M. Jihnson      cjohnson@jnlegal.net
Mark L. Radtke         mradtke@shawfishman.com
Brian L. Shaw           bshaw@shawfishman.com
Patrick S. Layng       USTP.Region11@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOPICNIC BRANDS, INC., | ) | Case No. 14-43382 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | Hearing Date: February 17, 2016 at 9:30 a.m. |

**SECOND AND FINAL FEE APPLICATION OF FREEBORN & PETERS LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND REQUEST FOR APPROVAL OF LIMITED NOTICE**

Freeborn & Peters LLP ("*F&P*"), counsel to the Official Committee of Unsecured Creditors (the "*Committee*") appointed in the above-captioned chapter 11 case of GoPicnic Brands, Inc. (the "*Debtor*"), hereby submits the *Second and Final Fee Application of Freeborn & Peters LLP as Counsel to the Official Committee of Unsecured Creditors* (the "*Final Fee Application*"), which seeks final approval and payment of compensation in the amount of $116,663.00 for services rendered and $257.78 for reimbursement of expenses incurred for the period of December 15, 2014 through January 21, 2016 and further requests approval of limited notice of this Final Fee Application. In support thereof, states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to sections 1334 and 157(a) of title 28 of the United States Code and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

2. The statutory predicates for the relief requested herein are sections 330, 331, 503(b), and 507(a)(1) of title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 2016

of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "*Local Rules*").

## BACKGROUND

3. On December 3, 2014 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois.

4. On December 17, 2014, the Office of the United States Trustee (the "*U.S. Trustee*") appointed the Committee as an official committee to represent the interests of unsecured creditors of the Debtor pursuant to section 1102 of the Bankruptcy Code. On December 17, 2014, the Committee selected F&P as its counsel. On January 7, 2015, the Court entered an order approving F&P's employment effective *nunc pro tunc* as of December 15, 2014.

5. On February 6, 2015, the Court entered an order approving the sale of substantially all of the Debtor's assets to Summit Strategic Investments, LLC (the "*Buyer*") for $909,233.82 plus assumption of certain of the Debtor's obligations.

6. On October 9, 2015, the Court entered an order allowing F&P, on an interim basis, $112,171.00 in compensation and $257.78 in expenses as chapter 11 administrative expenses of the Debtor's bankruptcy case.

7. The Committee received a payment of $30,000.00 (the "*Carveout*") on or about January 22, 2015 representing the Committee's agreed carve-out from the secured lender's collateral.

## RELIEF REQUESTED

8. F&P rendered services on behalf of the Committee from December 15, 2014 through January 21, 2016 (the "*Fee Application Period*"), for which F&P seeks final approval of

compensation in the amount of $116,663.00 and reimbursement of expenses in the amount of $257.78 for a total of $116,920.78.

9. To date, F&P has received payment of $30,000, representing the Carve-Out.

10. F&P has not previously sought approval of fees and expenses for the period of September 1, 2015 through January 21, 2016. A detailed schedule of the services rendered and expenses incurred (broken down by project category) by F&P during this time period is attached hereto as Group Exhibit A.[1]

11. By this Final Fee Application, F&P seeks an order: (1) allowing, on a final basis, F&P $116,663.00 in compensation and $257.78 in reimbursable expenses for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code, (2) authorizing payment to F&P of $86,920.78, representing all unpaid amounts owing to F&P, and (3) approving limited notice of this Final Fee Application.

**DISCUSSION**

12. Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . . In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

---

[1] F&P incorporates by reference the billing statements attached to its previously filed interim fee application, identified as Docket No. 110

- 3 -

13. The Seventh Circuit Court of Appeals has stated that:

> The computation of hourly fees depends on the number of hours "reasonably" expended, the hourly rate of each [professional], the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risk and the results obtained, and a complex of other considerations under the heading of "billing judgment."

*Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). Additionally, other courts of appeal have recognized that:

> [I]t is important for the court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation. It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that [the client] would not have enjoyed the success it did had its counsel managed matters differently.

*Boston and Main Corp. v. Moore*, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

14. In reviewing the Final Fee Application, the Court should be guided by the Seventh Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

> [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.

*In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992); *see Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984) (section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . . Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts.")

15. In *Continental Securities*, the Seventh Circuit found error in the lower court's practice of: (a) placing ceilings on the hourly rates of all lawyers; (b) refusing to allow paralegal

- 4 -

services to be compensated at market rate; (c) refusing to award a risk multiplier; (d) making large across-the-board cuts in research time; (e) making large across-the-board cuts in conference time; and (f) refusing to allow attorneys to bill computerized legal research services (*e.g.*, LEXIS). *Continental Illinois Securities Litigation*, 962 F.2d at 568-70.

16. In evaluating the Final Fee Application, the Court should consider the novelty and difficulty of the issues presented, the skill required to perform the legal services properly, the preclusion of other employment caused by F&P's retention in this case, the customary fees charged in similar cases, the existence of time limits under which the services were rendered, the results obtained, the experience and ability of the attorneys involved, and the amount of awards of compensation in similar cases. *See In re Alberto*, 121 B.R. 531, 534 (Bankr. N.D. Ill. 1990).

17. F&P's hourly rates of compensation for those attorneys and para-professionals during the Fee Application Period range from $215 to $845 (however, no professional with an hourly rate in excess of $615 has performed services herein). Those rates are comparable to rates charged by other practitioners having the same amount of experience, expertise, and standing for similar services in this jurisdiction. F&P consistently and consciously made every reasonable effort to represent the Committee in the most economical, efficient, and practical manner possible.

18. A summary of the compensation requested herein regarding each of F&P's professionals and para-professionals is set forth below:

| **Timekeeper** | **Title** | **Year of Illinois Bar Admission** | **Hourly Rate** | **Hours** | **Total Compensation Requested** |
|---|---|---|---|---|---|
| DeRousse, Shelly A. | Partner | 2001 | $400 | 162.1 | $64,840.00 |
| Eggert, Devon J. | Partner | 2006 | $370 | 3.4 | $1,258.00 |
| Fawkes, Thomas R. | Partner | 2002 | $530 | 0.6 | $318.00 |

| Timekeeper | Title | Year of Illinois Bar Admission | Hourly Rate | Hours | Total Compensation Requested |
|---|---|---|---|---|---|
| Macarol, Guy | Intern | N/A | $40 | 5.1 | $204.00 |
| Hazdra, Jacqueline E. | Paralegal | N/A | $200 | 10.8 | $2,160.00 |
| Isenberg, Shira R. | Senior Counsel | 2003 | $390 | 2.6 | $1,014.00 |
| Janczak, Elizabeth L. | Associate | 2010 | $290 | 51 | $14,790.00 |
| Lauter, Richard S. | Partner | 1982 | $615 | 50.3 | $30,934.50 |
| Mattson, Jeff | Partner | 1990 | $545 | 2.1 | $1,144.50 |
| | | | **TOTALS:** | **288** | **$166,663.00** |
| | | | **BLENDED RATE:** | | **$400.28** |

19.  No agreement or understanding exists between F&P and any other person for the sharing of compensation received or to be received in connection with this case, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and the Local Rules.

20.  F&P reserves the right to correct, amend, or supplement this Final Fee Application, including, without limitation, to seek payment in the event this Final Fee Application is not approved in full.

## SERVICES PERFORMED

21.  This Final Fee Application sets forth in detail the work performed by F&P and the time spent during the Fee Application Period.

**A.    General                                                    $20,469.50**

22.  F&P spent 47.3 hours at a cost of $20,469.50 on general matters. This category primarily includes time spent reviewing incoming pleadings, correspondence, and notices, preparing for and attending Court hearings on general case matters, corresponding with parties in interest concerning general case matters, and performing necessary administrative tasks typically

- 6 -

associated with a committee representation (including performing court filings, maintaining and updating dockets, calendars, and correspondence files, and retrieving necessary documents). Time in this category also includes services that cannot be classified in one discrete category, or time relating to general case administration matters.

**B.     Litigation                                                                  $13,576.00**

23.    F&P spent 43.3 hours at a cost of $13,576.00 on litigation issues. At the request of the Debtor, F&P pursued certain preference causes of action belonging to the Debtor's estate. Specifically, time spent in this category primarily includes drafting demand letters in connection with preference claims held by the Debtor's estate, reviewing and analyzing preferential transferees' defenses, and negotiating settlements with respect to such claims on behalf of the Debtor. Ultimately, the Debtor had final approval over all preference settlements and executed all settlement agreements.

**C.     Secured Creditor Issues                                              $15,353.00**

24.    F&P spent 37.6 hours at a cost of $15,353.00 on secured creditor issues. This category primarily includes time spent analyzing and responding to the Debtor's motions for cash collateral, engaging in negotiations with the Debtor and Wells Fargo regarding debtor-in-possession financing, and conducting a collateral analysis with respect to the liens and claims of the Debtor's pre-petition loan agreements with Wells Fargo.

**D.     F&P Retention and Fee Applications                         $5,938.50**

25.    F&P spent 21.8 hours at a cost of $5,938.50 on F&P retention and fee application matters. This category includes time spent preparing F&P's retention application, preparing an amendment to the retention application, and discussing the proposed retention with the Office of the U.S. Trustee.

| | | |
|---|---|---|
| E. | **Other Professional Retention** | **$975.00** |

26.　F&P spent 1.9 hours at a cost of $975.00 on other professional retention matters. This category includes services provided in connection with the Debtor's retention of financial consulting and marketing professionals from MorrisAnderson.

| | | |
|---|---|---|
| F. | **Plan and Disclosure Statement** | **$2,291.00** |

27.　F&P spent 7.9 hours at a cost of $2,291.00 on plan and disclosure statement issues. This category includes time drafting a joint plan of liquidation.

| | | |
|---|---|---|
| G. | **Committee Meetings and Governance** | **$16,457.00** |

28.　F&P spent 33.6 hours at a cost of $16,457.00 on Committee meetings and governance issues. This category primarily consists of time spent preparing and conducting meetings of the Committee and addressing inquiries from individual Committee members.

| | | |
|---|---|---|
| H. | **Asset Sales** | **$41,295.50** |

29.　F&P spent 94.1 hours at a cost of $41,295.50 on asset sale issues. This category primarily includes time spent by F&P professionals with respect to the sale of substantially all of the Debtor's assets. Specifically, time spent in this category includes: (i) negotiating with the Debtor regarding the proposed sale of its assets; (ii) reviewing and revising an Asset Purchase Agreement in connection with a possible sale of assets of the Debtor; (iii) reviewing proposed offers to purchase the Debtor's assets; (iv) analyzing the bids for the Debtor's assets; and (v) preparing for and attending the sale and auction of substantially all of the Debtor's assets, including preparing sale instructions.

| | | |
|---|---|---|
| I. | **Claims Analysis** | **$307.50** |

30.　F&P spent 0.5 hours at a cost of $307.50 on claims analysis issues. This category primarily includes time spent reviewing a spreadsheet provided by the Debtor concerning section 503(b)(9) claims.

**REASONABLE EXPENSES INCURRED**

31. Expenses during the Fee Application Period were incurred in the following categories:

(a) <u>Teleconferencing Expenses</u>: F&P incurred expenses in the amount of $86.00 for teleconferencing fees. Where multiple outside parties participate in a telephone conference, F&P uses an outside teleconferencing provider in order to efficiently conduct teleconferences. These teleconferencing services were necessary in order to confer with various parties-in-interest with respect to the plan and sale process.

(b) <u>Travel Expense</u>: F&P incurred expenses totaling $86.74 in transportation costs, due to the need for F&P professionals to frequently travel to the office of Debtor's counsel to conduct negotiations.

(c) <u>Miscellaneous</u>: F&P incurred miscellaneous expenses totaling $85.04, consisting of $37.44 in postage and $47.60 in LexisNexis legal research fees.

32. All expenses incurred by F&P in connection with its representation of the Committee were ordinary and necessary expenses. All expenses billed to the Committee were billed in the same manner as F&P bills non-bankruptcy clients.

33. F&P does not bill its clients or seek compensation in this Final Fee Application for certain overhead expenses, such as local and long-distance telephone calls, secretarial services, and facsimile transmissions. Such expenses are factored into F&P's hourly rates. F&P has not included certain other charges described herein in its overhead because it has determined that it is fairer to its smaller clients who use proportionately less of these services to have these expenses billed separately.

**BENEFIT TO THE ESTATE**

34. F&P has remained active on all matters in its representation of the Committee during this case. F&P submits that the services set forth herein benefitted the estate and its creditors by ensuring that the Debtor's assets were properly preserved, administered, and that they gained the highest value at the auction under the circumstances, maximizing the value of the estate for the benefit of general unsecured creditors.

**NOTICE**

35. There are more than 500 parties-in-interest on the Debtor's master mailing matrix. Pursuant to Bankruptcy Rule 2002(a)(6), twenty-one days' notice of this Final Fee Application has been provided to: (i) the Debtor; (ii) the Office of the United States Trustee for Region XI; and (iii) all entities that have filed a request for service of filings pursuant to Bankruptcy Rule 2002 in this case.

36. In light of the nature of the relief requested and the number of creditors in this bankruptcy case, F&P submits that no other or further notice is necessary and requests that the Court approve the limited notice requested herein.

**WHEREFORE**, F&P respectfully requests that the Court enter an order:

(a) allowing F&P, on a final basis, $116,663.00 in compensation for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(b) allowing F&P, on a final basis, $257.78 in reimbursable expenses for the Fee Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(c) authorizing payment to F&P of $86,920.78, representing all unpaid amounts owing to F&P on account of the Final Fee Application;

(d) approving the limited notice requested herein; and

(e) granting such other and further relief as the Court deems just and proper.

Dated: January 21, 2016  **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GOPICNIC BRANDS, INC.**

By: /s/ Shelly A. DeRousse
      Its Counsel

Shelly A. DeRousse, Esq.
Elizabeth L. Janczak, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: 312-360-6000
Facsimile: 312-360-6520